No. 19,938.

Harris Park Lakeshore, Inc., *v.* Lawrence Edward Church, by Ruby Shaffer, his next friend.

(381 P. [2d] 459)

Decided May 13, 1963.

Mr. STEPHEN PARK KINNEY, Mr. STEPHEN PARK KINNEY II, for plaintiff in error.

Mr. EARL J. HOWER, Mr. ROBERT E. MCLEAN, Mrs. MARJORIE WORLAND MCLEAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

THIS is the second time this controversy has been reviewed by this Court.

Ruby Shaffer, as the next friend of her minor grandson, Lawrence Edward, brought an action on his behalf against Harris Park Lakeshore, Inc., a Colorado Corporation, and one Kerr, alleging that on April 7, 1956, a horse named Smokie, owned and under the control of

one or both of the defendants, came onto the property owned by Ruby Shaffer and her husband, George; that Smokie's unauthorized entry onto the Shaffer property constituted a *trespass quare clausum fregit,* and that while thus trespassing Smokie kicked Lawrence Edward in the face, thereby inflicting grievous personal injuries for which claim was made in the amount of $92,000.

The first trial came to a halt when at the conclusion of the plaintiff's evidence the trial court granted a motion to dismiss interposed by each of the defendants. As to Kerr, the basis for the dismissal was a determination by the trial court that the evidence failed to establish that Kerr either "owned" Smokie, or had the horse in his "control, care or custody." As to the other defendant, Harris Park Lakeshore, Inc., the basis for the dismissal was that the plaintiff was barred from recovery because the Shaffers had failed to "fence out" Smokie with a fence meeting the requirements of C.R.S. '53, 8-13-1.

On review this judgment of dismissal was affirmed as it pertained to Kerr, but was reversed as to the defendant, Harris Park Lakeshore, Inc., and the cause was remanded with directions to grant a new trial, "permitting the parties to amend their pleadings as they may be advised." See *Robinson v. Kerr, et al.,* 144 Colo. 48, 355 P. (2d) 117, the subject case for an extended annotation on the general subject of liability for personal injury caused by trespassing livestock appearing in 88 A.L.R. (2d), beginning at page 705.

Before the second trial of this matter Harris Park Lakeshore, Inc., (hereinafter referred to as the defendant) and counsel who had theretofore represented it terminated their relationship, and the defendant then employed present counsel to defend the action. Neither litigant elected to amend the pleadings, though the defendant through its new counsel sought to rid itself of all admissions entered into by its prior counsel in the form of a pre-trial conference order and supplemented

by certain additional stipulations agreed to by the parties before the commencement of the first trial. This the trial court declined to do, and the propriety of its ruling will be discussed in greater detail, infra.

Although the first trial was to a jury, the litigants just before the start of the second trial waived their right to trial by jury and by agreement the case was tried to the court. This second trial culminated in a judgment for the plaintiff against the defendant in the amount of $31,000 plus interest thereon from the date the action was instituted. By appropriate order motion for new trial was dispensed with, and by writ of error the defendant now seeks reversal of the judgment.

The defendant initially contends that the evidence is legally insufficient to sustain the findings of the trial court and specifically urges that plaintiff failed to "establish his case in trespass." In this regard the trial court found that a horse named Smokie and belonging to the defendant trespassed onto the Shaffer property, and while so trespassing kicked and injured Lawrence Edward, who at the instance of his grandfather was then in the act of shooing the horse off the property. The court further found that under all the circumstances seven-year-old Lawrence Edward was as a matter of fact free from negligence.

At the outset it should be noted that in determining the sufficiency of the evidence in a trial to the court, we are not concerned with the fact that evidence which is technically inadmissible may have been erroneously received into evidence. Rather, we are searching the record to ascertain if there be competent evidence, independent of any testimony which may have been improperly received, which will support the findings and conclusions of the trial court. See *Vanadium Corporation of America v. Wesco Stores Company*, 135 Colo. 77, 308 P. (2d) 1011. Hence, defendant's suggestion that certain testimony was improperly received is to no avail, even though correct, *if* there otherwise be

competent evidence to support the judgment. Our examination of the record convinces us that the various findings and conclusions of the trial court are amply supported by competent evidence.

Before briefly reviewing the evidence, it is deemed appropriate at this juncture to state that in our view the trial court under the circumstances disclosed by the record did not err in refusing to countermand the pre-trial conference order and stipulation entered into by the litigants before the first trial of this matter. Before the first trial there was a rather elaborate written pre-trial conference order, which was supplemented by certain verbal admissions made in open court just prior to the commencement of the actual trial. One such admission on the part of the defendant was that as of April 7, 1956, it did in fact own a horse named Smokie.

Before the second trial, present counsel for defendant in effect asked the trial court to release it from all of the pre-trial admissions antedating the first trial. No reason was advanced by the defendant why this request should be granted. The trial court denied the request, and rightly so.

Rule 16, Colo. R.C.P., declares that a pre-trial conference order shall govern and control "the subsequent course of the action, unless modified at the trial to prevent manifest injustice." The rule contains no language limiting its application to the "first" trial only of a case. The defendant here made no showing that the order and stipulation worked any "manifest injustice," in the sense that it had, for example, stipulated to something as being a fact which in truth it was not. Rather, this appears to be nothing but an instance where new counsel for the defendant, as a matter of trial strategy, determined if possible to adopt a policy of "admit nothing," and require its adversary to "prove all." Such tactic is completely at odds with both the spirit and letter of the Rules of Civil Procedure, and the trial court quite properly declined to go along therewith. In sup-

port of the proposition that a change in counsel is not sufficient in and of itself to justify vitiating a pre-trial conference order or an admission made in open court and a part of the record, see *King v. Edward Hines Lumber Company*, 68 Fed. Supp. 1019.

Did the plaintiff prove his case in trespass? We hold that he did. The defendant by way of pre-trial stipulation admitted that as of April 7, 1956, it owned a horse named Smokie. Plaintiff's witness Kerr identified exhibit A as being a picture of two horses, one of which was owned by him and a second horse which "looked like" Smokie and which he "understood" belonged to the defendant. Kerr, a former defendant in the case, was understandably a somewhat reluctant witness, and even though on cross-examination he declared he was not "absolutely positive," certainly the trial court was justified in concluding from his testimony that the aforementioned exhibit depicted, inter alia, a horse bearing the name Smokie and belonging to the defendant. Thereafter, both Lawrence Edward and his maternal grandmother using exhibit A positively identified this particular horse, i.e. Smokie as being the one which kicked Lawrence Edward.

Similarly, Lawrence Edward, his maternal grandmother and his maternal grandfather, the latter person being called as a witness by the defendant, all testified that the kicking episode took place inside the property lines of the Shaffer property. In this connection defendant now contends that the place of the kicking incident was not definitely and positively shown to have been on the Shaffer property. The background evidence was that Kerr originally sold considerable acreage to the defendant company, and that a one acre tract of this land was eventually sold to the Shaffers. The Shaffers built a fence on the property line as the same had been surveyed by the seller. All the evidence was to the effect that Smokie followed Lawrence Edward through a gate leading into the Shaffer property and came onto

a small bridge located on the Shaffer land; that at this point the grandfather told the seven-year-old boy to shoo the horse off the Shaffer property; that the boy tried to shoo the horse, but the horse reared around and kicked the boy in the face.

■ The foregoing recital is deemed sufficient to demonstrate that there is evidence to support the findings of the trial court. Further, the evidence before the court in the first trial of this matter was for all practical purposes the same as that introduced at the second trial, and in *Robinsin v. Kerr*, supra, we held that the evidence adduced by the plaintiff was sufficient to establish a prima facie case against the owner of Smokie under the common law doctrine of *trespass quare clausum fregit*.

■ Defendant's remaining assignments of error are of a relatively inconsequential nature and hence deemed worthy of only passing comment. At the very moment of the commencement of the second trial defendant sought leave of court to file two third party complaints: one against George Shaffer, maternal grandfather of Lawrence Edward, alleging that his negligence was the proximate cause of his grandson's injuries; and the second against one Tony Gilberte, on the premise that the equine culprit was not Smokie, but a horse which belonged to Gilberte. The trial court denied this motion for leave to institute third party proceedings for the stated reason that the motion was not timely made and if granted would result in further delay. In so holding the trial court did not abuse its discretion but on the contrary was eminently correct. In approving this action of the trial court in denying defendant leave to file its third party complaints for the reason that the request came too late, we do not wish to be thereby understood as indicating or intimating that the tendered third party complaints are otherwise sufficient and in compliance with Rule 14, Colo. R.C.P.

Defendant also contends that the trial court com-

mitted error in refusing to allow it to cross-examine its own witness, George Shaffer, grandfather of Lawrence Edward. George Shaffer, an eyewitness to the tragic incident wherein Lawrence Edward lost his eye and suffered other head injuries with resultant brain damage, was called by defendant as its witness. Counsel then in his direct examination proceeded posthaste to attempt to establish by leading questions that very shortly after the accident this witness identified a horse belonging to Gilberte as the horse which had kicked his grandson, counsel not making any initial inquiry as to whether Shaffer as of the time of the trial could identify the horse which had done the kicking. The trial court upon objection quite properly stopped this method of inquiry in its tracks, with the astute observation that counsel was going at it "backwards."

The general rule, of course, is that one may not cross-examine his own witness, and most certainly may not do so in the first instance. A trial court in the exercise of sound discretion may permit one to cross-examine his own witness upon an adequate showing of surprise, or that the witness is unwilling and hostile. See *McBrayer v. Zordel,* 127 Colo. 438, 257 P. (2d) 962.

In the instant case George Shaffer was not an adverse party within the meaning of Rule 43 (b), Colo. R.C.P., nor is there anything in the record to indicate that he was an unwilling or hostile witness, or that counsel was taken by surprise at any of his limited testimony. Under the circumstances defendant was not entitled to cross-examine its own witness.

Careful review of the entire matter convinces us that there was no error committed in the retrial of this case, and the judgment is therefore affirmed.

Mr. Chief Justice Frantz and Mr. Justice Sutton concur.